SED, INC., et al., Plaintiffs,

v.

CITY OF DAYTON, Defendant.

No. C–3–81–193.

United States District Court,
S. D. Ohio, W. D.

June 11, 1981.

William R. McCarty, Fairborn, Ohio, for plaintiffs.

Thomas G. Petkewitz, Dayton, Ohio, for defendant.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, SAVE AND EXCEPTING THAT PORTION OF THE MOTION DIRECTED TO PLAINTIFFS' DUE PROCESS ALLEGATIONS WHICH IS SUSTAINED; PLAINTIFFS' MOTION SEEKING LEAVE OF COURT TO AMEND COMPLAINT SUSTAINED; PLAINTIFFS TO AMEND COMPLAINT WITHIN SEVEN (7) DAYS FROM DATE; DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION SEEKING PRELIMINARY INJUNCTION; PLAINTIFFS DIRECTED TO FILE MOTION FOR SUMMARY JUDGMENT ON PREEMPTION ISSUE WITHIN STATED PERIOD OF TIME; BRIEFING SCHEDULE SET FORTH ON MOTION FOR SUMMARY JUDGMENT; ORAL HEARING SET ON MOTION FOR SUMMARY JUDGMENT

RICE, District Judge.

The captioned cause came to be heard upon two motions, to wit:

(1) the motion of the Defendant, City of Dayton, Ohio, seeking an Order of the Court dismissing the amended complaint for reason that the Court lacks jurisdiction over the subject matter, and because no claim is stated upon which relief can be granted; and

(2) the motion of the Plaintiffs, SED, Inc., and two of its officers, seeking an Order of the Court preliminarily enjoining the Defendant from enforcing certain recently enacted City ordinances against

Plaintiffs "in either a civil or criminal fashion." This motion, in effect, seeks a federal court injunction restraining the Defendant from prosecuting its nuisance action (with attendant request for preliminary injunctive relief) against the Plaintiffs in the Montgomery County Common Pleas Court.

## I.

SED operates a chemical warehouse within the Dayton city limits. SED has stored, and continues to store, polychlorinated biphenyls (PCBs) in said warehouse.

On November 19, 1980, the Dayton City Commission enacted sections 97.01 to 97.09 and 97.97 to 97.99 of the Revised Code of General Ordinances. To the extent herein pertinent, said enactment prohibits the storage of PCBs within the Dayton city limits. Civil and criminal penalties are provided for violation of the prohibition. Moreover, the enactment provides that the storage of PCBs within the City shall constitute a public nuisance, and empowers the city attorney to seek an injunction against such storage.

In the amended complaint, Plaintiffs allege that the subject ordinances are invalid on three grounds. First, Plaintiffs claim that the regulation of PCB storage has been expressly preempted by federal law, *see* Toxic Substances Control Act §§ 6(e), 18, 15 U.S.C. §§ 2605(e), 2617; 40 C.F.R. §§ 761.-10(a)(6), 761.42, and that supplemental local legislation on the matter, such as the Dayton ordinances, is, therefore, unconstitutional under the supremacy clause of the federal constitution, U.S.Const. Art. VI, cl. 2. Second, Plaintiffs claim that the Dayton ordinances place "unreasonable, arbitrary, and capricious restraints" upon SED's business, and are, therefore, unconstitutional under the due process clause of the federal constitution, U.S.Const. amend. XIV. Third, Plaintiffs claim that the Ohio legislature has undertaken to exclude municipal regulation of the storage of hazardous wastes, Ohio Rev.Code Ann. § 3734.05, and that the Dayton ordinances are, therefore, invalid under Article XVIII, section 2, of the state constitution.

With respect to the first and second claims, Plaintiffs allege that this Court has subject matter jurisdiction by virtue of the diverse citizenship of the parties, *see* 28 U.S.C. § 1332, because the claims arise under the federal constitution and federal laws, *see* 28 U.S.C. § 1331, and (apparently with specific respect to the first claim) because it concerns a matter involving the federal regulation of commerce, *see* 28 U.S.C. § 1337. Plaintiffs say that this Court may hear the third claim under the doctrine of pendent jurisdiction.

Plaintiffs primarily demand declaratory relief. 28 U.S.C. §§ 2201–2202.

## II.

The Defendant's motion to dismiss contains seven branches which will be addressed seriatim.

In Branch I of the motion, the Defendant says that Plaintiffs' attempt to invoke the subject matter jurisdiction of this Court on grounds of diversity of citizenship must fail because the amended complaint cites the wrong jurisdictional statute (i. e., section 1331 of Title 28 is cited rather than section 1332). Defendant says that this error amounts to an insufficient allegation of jurisdiction under Fed.R.Civ.P. 8(a)(1), and that diversity jurisdiction, therefore, does not lie under the amended complaint. In response, Plaintiffs admit to a "typographical error" in the subject citation, and request leave of Court to amend the amended complaint so that it might reflect the appropriate statute. Defendant counters this request with the contention that, under the circumstances, leave to amend can only be granted upon formal motion. *Cf.* Fed.R.Civ.P. 15(a), 60(a).

■ The allegation of diversity jurisdiction is sufficient despite the error in citation. Leave to amend in order to cite the correct statute is not required and will not be considered. Fed.R.Civ.P. 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice." The amended complaint explicitly invokes this Court's

jurisdiction because "the matter ... is between citizens of different states." The fact of diverse citizenship is apparent on the face of the pleading. "Substantial justice" requires that this Court recognizes that diversity jurisdiction has been invoked.

Branch I of the motion to dismiss is patently and blatantly without merit and is, therefore, overruled.

■ In Branch II of the motion, the Defendant says that the bare assertion in the amended complaint that the amount in controversy exceeds $10,000 is insufficient to invoke the Court's federal question jurisdiction under 28 U.S.C. § 1331. Although the amended complaint does allege that the ordinances in question provide penalties up to $25,000, it is not alleged that Plaintiffs are in violation of the ordinances or subject to such penalties. Plaintiffs' response is that reference to the penalties provided by the ordinances at issue is a sufficient allegation of the monetary minimum. Further, Plaintiffs point out that, subsequent to the commencement of this action, the Defendant filed suit in state court against Plaintiffs seeking, *inter alia*, over two million dollars in damages, and an injunction, for Plaintiffs' violation of the ordinances, on grounds of public nuisance.

The parties have failed to note that section 1331 was amended on December 1, 1980, to delete the requirement of a $10,000 minimum amount in controversy for jurisdiction under that section.

Branch II of the motion to dismiss is without merit and is, therefore, overruled.

The Court does note that the $10,000 minimum amount in controversy remains a requirement for diversity jurisdiction under 28 U.S.C. § 1332 (see discussion of Branch I, *supra*). To the extent that the Defendant's contentions in Branch II deserve consideration on that basis, the Court concludes that the monetary allegations in the amended complaint are sufficient. Although Plaintiffs do not *explicitly* allege that they are in violation of the ordinances at issue or subject to the penalties contained, therein, that is the only tenable inference which may be derived when paragraphs 5 and 6 of the amended complaint are construed together.

In Branch III of the motion to dismiss, the Defendant says that jurisdiction under 28 U.S.C. § 1337 has been improperly invoked because there is no allegation in the amended complaint to indicate the manner in which the ordinances at issue might be said to impermissibly regulate interstate commerce. In response, Plaintiffs point out that the amended complaint, fairly construed, alleges that the ordinances at issue intrude into matters exclusively regulated by a federal statute which was enacted pursuant to Congress' constitutional authority to regulate interstate commerce. U.S. Const. Art. I, § 8, cl. 3. Defendant replies with reference to an "item" in the Federal Register, 44 Fed.Reg. 31528 (1979), which indicates that the agency responsible for the administration of the federal statute may have determined that local legislation regarding PCB disposal (if as restrictive *or more restrictive* than federal regulations) is *not* preempted by the exercise of federal authority in the area.

■ It matters not whether the ordinances at issue regulate or infringe upon interstate commerce. The allegation of jurisdiction under section 1337 in the amended complaint is appropriate and sufficient because the claims in that pleading, in substantial part, "arise under" federal legislation which finds substantial authority for its enactment in the commerce clause. *Springfield Television, Inc. v. City of Springfield*, 428 F.2d 1375, 1378–79 (8th Cir. 1970); *Lumberman's Underwriting Alliance v. Hills*, 413 F.Supp. 1193, 1197–98 (W.D. Mo.1976). In other words, even if the subject ordinances have no effect on interstate commerce, *but cf. Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), it is sufficient for section 1337 jurisdiction that they are alleged to violate an express federal preemption statute, 15 U.S.C. § 2617, which statute is an appropriate part of an exercise of federal authority over interstate commerce. Defendant's reference to the "item" in the Federal Register does not alter the conclusion. Whatever

value that item may ultimately be determined to have,[1] it would appear to go to the merits of Plaintiffs' claims (or perhaps, more exactly, to the merits of some defense) rather than to the sufficiency of jurisdictional allegations.

Branch III of the motion to dismiss is without merit, and is, therefore, overruled.

In Branch IV of the motion, the Defendant says that the amended complaint should be dismissed because the allegations, therein, are insufficient to present a "justiciable controversy." Defendant apparently refers to the "cases and controversies" limitation on federal court jurisdiction contained in Article III, section 2, of the constitution.

It is alleged in paragraph 13 of the amended complaint that "[t]he City of Dayton has manifested a genuine credible threat that the Plaintiffs may be arrested and charged under its Ordinance." An allegation of a "threat of specific future harm" is a sufficient allegation of the existence of an actual controversy satisfying the constitutional requirement. *Cf. Laird v. Tatum*, 408 U.S. 1, 15, 92 S.Ct. 2318, 2326, 33 L.Ed.2d 154 (1972). Once threatened with prosecution, it is not necessary under Article III that Plaintiffs await prosecution before presenting the controversy in federal court. *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505

1. The meaning and effect of the item are not all that clear. The item is a *preamble* to PCB rules adopted by the Environmental Protection Agency on that date, rather than a rule itself. Whether the item constitutes an authoritative interpretation by the agency (which, presumably, authorized the preamble) of its power to *broadly* exempt local legislation from preemption under the statute is, therefore, subject to doubt.

Moreover, even if the item were to be considered authoritative, it is unclear that it does suggest such a broad exemption from preemption. In the paragraph referred to by the Defendant, the item merely indicates that the EPA had "taken the position" in *former rules* (i. e., superseded by rules promulgated on that date) that more restrictive local legislation in five specific states should be protected from preemption. In the *following paragraph*, the EPA expressed its concern that continued allowance of *more restrictive* local legislation might be misconstrued as a license for the states *to refuse to share in the burden* of a proper national policy for PCB disposal (which appears to be the effect of the Dayton ordinances at issue). Although the item concludes with the indication that the "EPA has decided not to make any changes in its preemption policy at this time" (presumably, the policy reflected in the *former, superseded rules*), Defendant has not directed this Court's attention to any EPA PCB rule, *currently in effect*, which suggests such broad exemption from preemption for local legislation.

Finally, even if such current rule does exist, the Court would have substantial reason to question its validity. A broad administrative exemption of more restrictive local legislation from preemption would constitute a clearly excessive exercise of the EPA's extremely limited authority to grant *specific* exemptions, upon *specific* application by a local governmental entity, pursuant to 28 U.S.C. § 2617(b).

The validity of an EPA rule granting a broad exemption from preemption for more restrictive local legislation is not presently at issue since the existence of such a rule has not yet been demonstrated. However, the Court does note that a jurisdictional difficulty may arise should a challenge to such rule, herein, become necessary.

Section 2618 of Title 15 provides, *inter alia*, that jurisdiction to "review" a PCB rule lies exclusively in the Circuit Courts of Appeals. At least one district court has concluded that section 2618 vests exclusive jurisdiction in the Courts of Appeals with respect to any direct pre-enforcement challenge to such rules. *Dow Chemical Company v. Costle*, 484 F.Supp. 101, 104–07 (D.Del.1980). However, the District of Columbia Circuit appears to have determined that the exclusive appellate court jurisdiction under section 2618 extends only to rule challenges which can be decided solely by reference to the EPA's rulemaking record. If other evidence needs to be taken in order to dispose of the action, then the action does not strictly seek a "review" and section 2618 would not foreclose district court jurisdiction over the matter. *Environmental Defense Fund, Inc. v. Environmental Protection Agency*, 636 F.2d 1267, 1273–74 (D.C.Cir.1980).

This Court has *tentatively* concluded that the District of Columbia Circuit's interpretation is better-reasoned and that, given the circumstances of this case, this Court would have jurisdiction to determine the validity of an EPA rule granting a broad exemption from preemption for more restrictive local PCB legislation. However, if such a rule is found to exist, and if the Defendant chooses to rely, thereon, such that a challenge to the rule's validity becomes necessary, then this Court's *final* determination on its jurisdiction to consider the matter would require briefing by the parties.

(1974). Moreover, although Defendant's complaint against Plaintiffs in state court has not been submitted, herein, in any form which would permit this Court to take cognizance, thereof, this Court does note the existence of such state court action by virtue of affidavits which are a proper part of the record in this matter. The state court action by Defendants, although civil rather than criminal in character, suggests that Plaintiffs' perception and allegation of a threat of future harm was neither speculation nor conjecture, and that the controversy is actual.

Branch IV of the motion to dismiss is without merit and is, therefore, overruled.

■ In Branch V of the motion, Defendant says that the allegation in the amended complaint that the ordinances at issue place "unreasonable, arbitrary and capricious restraints" upon SED's business, is insufficient to state a claim for relief from deprivation of constitutional due process. *See, Car-Two, Inc. v. City of Dayton*, 357 F.2d 921 (6th Cir. 1966). The Court agrees that the pleading is factually insufficient to apprise the Defendant of the manner in which its ordinances might be deemed "unreasonable, arbitrary and capricious" (even if, as it appears, they do restrain SED's business), or how said ordinances might otherwise deprive Plaintiffs of due process.

Branch V of the motion to dismiss the due process allegations is well taken and is, therefore, sustained. As indicated below, the Plaintiffs will be given leave of Court to amend their complaint. Since the dismissal of the due process allegations in their complaint is without prejudice, the Plaintiffs may choose to include said grounds, supported with factually sufficient allegations in their amended complaint.

In Branches VI and VII of the motion, the Defendant says that this Court should abstain from the exercise of jurisdiction or decline to exercise pendent jurisdiction in this cause. For reasons which will be explained in a later entry by this Court, Branches VI and VII of the motion to dismiss are deemed to be without merit.

For the forestated reasons, Branch V of the motion to dismiss is well taken and sustained. In all other parts, said motion is not well taken and is overruled.

### III.

Plaintiffs' motion for preliminary injunctive relief seeks an Order of the Court restraining the Defendant from enforcing the ordinances at issue against Plaintiffs "in either a civil or criminal fashion." As indicated previously, this motion, in effect, seeks a federal court injunction restraining the Defendant from prosecuting its nuisance action (with attendant request for preliminary injunctive relief) against the Plaintiffs in the Montgomery County Common Pleas Court.

■ Under ordinary principles of equity, an applicant for preliminary injunctive relief bears the burden of satisfying the Court that, *inter alia*, he is threatened with certain irreparable harm, and will suffer same, should the decree not issue. *See Plain Dealer Publishing Company v. Cleveland Typographical Union*, 520 F.2d 1220, 1223 (6th Cir. 1975), *cert. denied*, 428 U.S. 909, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976); *North Avondale Neighborhood Association v. Cincinnati Metropolitan Housing Authority*, 464 F.2d 486, 488 (6th Cir. 1972); *Hamlin Testing Laboratories, Inc. v. United States Atomic Energy Commission*, 337 F.2d 221, 222 (6th Cir. 1964).

The *only* evidence of impending harm adduced by Plaintiffs, in support of their motion, is the affidavit of Plaintiffs' counsel indicating that Defendant has commenced a civil action in state court, and that, in that action, Defendant has requested immediate injunctive relief restraining Plaintiffs' storage of PCBs in the city. (This Court notes, in passing, that neither the Defendant's complaint in state court, nor its request for preliminary relief, therein, have been submitted, herein, in any form in which this Court might take cognizance thereof). There is absolutely no evidence or indication on the record in this matter (except for the allegation in the amended complaint, which is sufficient to raise a "case or

controversy") that Plaintiffs have *otherwise* been threatened with harm *unrelated to the ongoing state civil action* (i. e., such as a threat of *future* initiation of criminal proceedings, administrative penalties, or the like).

■ The Court assumes, without deciding, that the state civil action constitutes *irreparable* harm, or the threat thereof, to Plaintiffs. However, this does not satisfy Plaintiffs' burden of showing that they will suffer irreparable harm *should this Court's equitable decree not issue.* Simply stated, whether or not this Court might determine that the ongoing state proceedings have or will irreparably injure Plaintiffs, there is nothing this Court can do to prevent same.

The Anti-Injunction Act, 28 U.S.C. § 2283, provides:

A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The Sixth Circuit has construed section 2283, in essence, as an *absolute* prohibition against federal court interference with *in personam* actions in state court, even if the priority of federal court jurisdiction has been established, as herein, by earlier commencement of an action on the same subject matter. *Roth v. Bank of the Commonwealth,* 583 F.2d 527 (6th Cir. 1978), *cert. dismissed,* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979).

Plaintiffs have not demonstrated that they are subject to any threat of harm *other than* the arguably irreparable harm related to the ongoing state proceedings. This Court is powerless to prevent the only threat of harm which Plaintiffs have demonstrated does exist.

Plaintiffs' motion seeking an Order of the Court granting preliminary injunctive relief is not well taken and same is, therefore, overruled.

## IV.

The Court has concluded that Plaintiffs are not entitled to preliminary injunctive relief because they have failed to demonstrate a threat of irreparable harm *which this Court is empowered to prevent.* Therefore, the Court need not address the sufficiency of Plaintiffs' showing with respect to the other traditional prerequisites for a preliminary injunction, including the "probability of success on the merits." However, with a view toward the most expeditious disposition of these proceedings, the Court makes the following observations.

It plainly appears to the Court that the most substantial claim in the amended complaint is Plaintiffs' contention that the ordinances at issue are unconstitutional, invalid, and of no effect, because they seek to regulate in a field which has been preempted by federal legislation. Plaintiffs seek a declaratory judgment to this effect.

Under the circumstances, this claim does not appear to present exceedingly difficult questions requiring protracted pretrial proceedings or the taking of substantial evidence. In Section 18 of the Toxic Substance Control Act, 15 U.S.C. § 2617, Congress has provided:

§ 2617. *Preemption*

(a) *Effect on State Law*

. . . .

(2) Except as provided in subsection (b) of this section—

. . . .

(B) if the Administrator [of the Environmental Protection Agency] prescribes a rule or order under section . . . 2605 of this title . . . which is applicable to a chemical substance or mixture, and which is designed to protect against a risk of injury to health or the environment associated with such substance or mixture, no State or political subdivision of a State may, after the effective date of such requirement, establish or continue in effect, any requirement which is applicable to such substance or mixture, or an article containing such substance or mixture, and which is designed to protect against such risk unless such requirement (i) is identical to the requirement prescribed

by the Administrator, (ii) is adopted under the authority of the Clean Air Act or any other Federal law, or (iii) prohibits the use of such substance or mixture in such State or political subdivision (other than its use in the manufacture or processing of other substances or mixtures).

"Subsection (b) of this section," at section 2617(a)(2), above, refers to the exemption from preemption which may be granted by the Administrator upon application of a state or political subdivision. "Section 2605 of this title" refers to 15 U.S.C. § 2605, which authorizes the Administrator to regulate hazardous substances. Subsection (e) of section 2605 specifically authorizes the Administrator to promulgate rules with respect to PCBs.

On May 31, 1979, the Administrator prescribed comprehensive rules applicable to PCBs. *See* 40 C.F.R. Pt. 761.

Of course, an unambiguous declaration by Congress that it intends to occupy a field must be treated as dispositive regardless of the nature of the subject; state action in such a case is invariably preempted, providing Congress has acted constitutionally.

L. Tribe, *American Constitutional Law* (1978) § 6–25 at 386. It is the "rare case" where Congress makes a clear statement of its intent to occupy a field, *id.*, but, in enacting section 2617 and in promulgating regulations under section 2605(e), Congress and its delegate (the EPA Administrator) have certainly done so with respect to the regulation of PCBs.

There remain only three questions precedent to the determination whether or not the ordinances at issue (which also regulate PCBs) are an unconstitutional and invalid intrusion by a state's political subdivision into an area of regulation which Congress has expressly preempted:

(1) Is the Toxic Substances Control Act, or the rules promulgated, thereunder, unconstitutional or invalid?

(2) Do the ordinances at issue (primarily § 97.03, thereof) regulate PCBs in such manner that they fall within the internal exemptions to the preemptive effect of section 2617(a)(2)(B) (e. g., are the ordinances identical to the federal regulations, do they merely prohibit use of PCBs, etc.)?

(3) Has the Administrator issued any rule, upon application by Dayton, exempting it from the preemptive effect of section 2617(a)(2)(B), pursuant to section 2617(b)?

The first two questions are predominantly questions of law. The second question does require that the content of the ordinances in question be submitted in a form in which this Court may take cognizance, thereof (this has not yet been done, *cf.* Fed.R.Civ.P. 56(e)) but, beyond that, would appear to involve only legal matters of interpretation. The third question, although strictly factual, might be readily proved by admission, stipulation, or affidavit.

If each of the three preceding questions is answered in the negative, then it would appear clear that the ordinances in question (to the extent they attempt regulation of PCBs) would be unconstitutional under the supremacy clause, U.S.Const. Art. VI, cl. 2, invalid, and of no effect. Plaintiffs, thereupon, would be deemed entitled to a declaratory judgment to that effect.

Therefore, in an attempt to expeditiously resolve the potentially dispositive preemption issue in Plaintiffs' cause, herein, the Court hereby Orders that the Plaintiffs file a motion for summary judgment on the preemption issue within seven (7) days from date of this decision, with accompanying memorandum briefing the three preceding questions (including appropriate submissions addressed to factual questions). The Defendant will file its contra memorandum within seven (7) days following receipt of Plaintiffs' motion and memorandum. Plaintiffs will then have three (3) days within which to file a reply memorandum. An oral hearing will be had on said motion at 1:00 p. m. on Wednesday, July 1, 1981.

## V.

There are two remaining matters.

First, Plaintiffs have requested leave of Court to file a second amended complaint for the purpose of asserting an additional claim against the Defendant (apparently, to allege unlawful discrimination against interstate commerce). Defendant opposes such leave on grounds that it would be unfair to allow Plaintiffs "a third bite at the pleading apple, so to speak," and because assertion of the new claim would be "futile."

The Defendant has not demonstrated that it will be prejudiced if Plaintiffs amend. The new claim which Plaintiffs seek to assert does not, at this time, appear to be frivolous or wholly insubstantial. Moreover, in view of the fact that Plaintiffs should be given the opportunity to reassert and fully articulate their due process claim, dismissed in Part II, above, the Court concludes that "justice so requires" that leave to amend presently be given.

Plaintiffs' motion seeking leave of Court to file a second amended complaint is well taken and sustained. Plaintiffs are to file said second amended complaint within seven (7) days from date.

Second, the Defendant has filed three motions seeking to have certain of Plaintiffs' pleadings stricken from the record, and one motion seeking correction of a citation in one of its own pleadings.

Defendant's motion to correct its pleading and the motion to strike Plaintiffs' submissions regarding default judgment are well taken and sustained.

Defendant's two remaining motions to strike are, "in the alternative," responses to the Plaintiffs' memoranda which said motions seek to have stricken. It should be evident from this Court's consideration of the content of Plaintiffs' memoranda, above, that these motions are not well taken. Specifically, the Court doubts whether Defendant has correctly interpreted S.D. Ohio R. 3.6.1, and questions whether the indiscriminate application of S.D.Ohio R. 3.5.1 (which prescribes duties for the clerk of courts) would serve substantial justice.

Defendant's "alternative" motions to strike certain of Plaintiffs' memoranda are both not well taken and are overruled in their entireties.